FLOYD SIMMS *v.* WARDEN, STATE PRISON
(14924)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and LAVERY, Js.

Argued June 1—decision released August 9, 1994

*Meryl Anne Spat,* with whom was *Louis S. Avitabile,* special public defender, for the appellant (petitioner).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Jacqueline J. Footman,* assistant state's attorney, and, on the brief, *Patricia A. Swords,* state's attorney, for the appellee (respondent).

PETERS, C. J. The dispositive issue in this appeal from the trial court's denial of a writ of habeas corpus is whether the habeas court abused its discretion by denying the petitioner's request for certification to appeal. Earlier this year, in *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994) (*Simms I*), we held that an appeal, rather than a writ of error, is the proper procedure for appellate review of the denial of a request for certification to appeal the denial of a writ of habeas corpus. Invoking our appellate jurisdiction under General Statutes § 52-265a, we thereafter permitted a belated appeal to allow the petitioner, Floyd Simms, to present his argument that the habeas court had improperly denied his request for certification. We affirm the judgment of the habeas court.

The procedural history of this case is recounted in *Simms I,* supra, 229 Conn. 179. The petitioner filed an

amended petition for a writ of habeas corpus to challenge the legality of his detention by the defendant, the warden of the Connecticut correctional institution at Somers (state). His detention results from his 1983 conviction of accessory to assault of a person sixty years of age or older in the first degree pursuant to General Statutes §§ 53a-59 (a) (3), 53a-59a and 53a-8, and of robbery in the second degree pursuant to General Statutes § 53a-135 (a) (1).[1] We affirmed his conviction on direct appeal. *State* v. *Simms*, 211 Conn. 1, 557 A.2d 914, cert. denied, 493 U.S. 843, 110 S. Ct. 133, 107 L. Ed. 2d 93 (1989).

In his petition for a writ of habeas corpus, the petitioner alleges that his conviction should be set aside, or that he should be resentenced, on one of three

[1] General Statutes § 53a-59 provides in relevant part: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

General Statutes § 53a-59a provides in relevant part: "ASSAULT OF A VICTIM SIXTY OR OLDER IN THE FIRST DEGREE: CLASS B FELONY: FIVE YEARS NOT SUSPENDABLE. (a) A person is guilty of assault of a victim sixty or older in the first degree, when he commits assault in the first degree under . . . section 53a-59 (a) (3) and the victim of such assault has attained at least sixty years of age . . . .

"(c) Assault of a victim sixty or older in the first degree is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

General Statutes § 53a-8 provides in relevant part: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-135 provides in relevant part: "ROBBERY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and (1) he is aided by another person actually present . . . .

"(b) Robbery in the second degree is a class C felony."

grounds: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) violation of his rights to due process under the federal and state constitutions. Each of the counts in the petition is premised on the petitioner's underlying contention that the trial judge, *Corrigan, J.*, should have recused himself from presiding at the petitioner's jury trial. The petitioner contends that recusal was necessary largely because Judge Corrigan had presided over a previous jury trial that had resulted in the petitioner's conviction of the crime of felony murder and, at the sentencing for that crime, had commented on the petitioner's lack of credibility. *Simms I,* supra, 229 Conn. 179 n.3.

The habeas court resolved all three counts of the habeas petition against the petitioner. At the outset of the evidentiary hearing, the habeas court dismissed the third count, in which the petitioner claimed that the trial judge's failure to recuse himself from presiding over the petitioner's criminal trial had deprived the petitioner of his constitutional right to due process. The habeas court dismissed this count because it contained no allegations that might excuse the petitioner's failure to raise this issue in his direct appeal. After the conclusion of the evidentiary hearing and the filing of briefs, the habeas court denied, on their merits, the remaining counts alleging ineffective assistance of trial and appellate counsel. The habeas court also denied the petitioner's subsequent request, pursuant to General Statutes § 52-470 (b),[2] for certification to appeal. The

---

[2] General Statutes § 52-470 provides: "SUMMARY DISPOSAL OF THE CASE. APPEAL BY PERSON CONVICTED OF CRIME. (a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of the case as law and justice require.

"(b) No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has

petitioner has appealed from the trial court's denial of certification and its adverse disposition on each of the counts of his petition.

In *Simms I,* in directing a habeas corpus petitioner to pursue an appeal rather than a writ of error in order to challenge an adverse judgment of the habeas court, we suggested that such an appeal requires the petitioner to make a two part showing. Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. Abuse of discretion is the proper standard because that is the standard to which we have held other litigants whose rights to appeal the legislature has conditioned upon the obtaining of the trial court's permission. *State* v. *Bergin,* 214 Conn. 657, 660–61, 574 A.2d 164 (1990); *State* v. *S & R Sanitation Services, Inc.,* 202 Conn. 300, 311, 521 A.2d 1017 (1987); *State* v. *Avcollie,* 174 Conn. 100, 110–11, 384 A.2d 315 (1977). If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. *Simms I,* supra, 229 Conn. 186–87. We adopt this two part test as our holding in this case and conclude that the habeas court did not abuse its discretion in denying the petitioner's request for certification to appeal.

I

Before we undertake a review of the petitioner's appeal to determine whether he has met his threshold burden of demonstrating an abuse of discretion in the denial of his certification to appeal, we must clarify two

been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the supreme court or appellate court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

antecedent procedural issues. The first is a question of characterization: in a habeas corpus case, does a decision on the issue of abuse of discretion implicate the jurisdiction of the appellate tribunal? The second is a question of standards: in a habeas corpus case, is a decision on the issue of abuse of discretion governed by articulable criteria, and, if so, what should these criteria be?

### A

The grant of a qualified right to appeal in § 52-470 (b) is the source of the jurisdictional issue that we must decide. That subsection provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the supreme court or appellate court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies." The question raised by § 52-470 (b) is whether the language before "[n]o appeal . . . may be taken" was intended by the legislature as a limitation on the jurisdiction of the appellate tribunal or as a limitation on the scope of the review by the appellate tribunal.

In *Simms I,* supra, 229 Conn. 187–89, we assumed that § 52-470 (b) imposed jurisdictional constraints upon an appellate tribunal because we have so held in cases interpreting General Statutes § 54-96, which authorizes the state, with the permission of the trial court, to appeal questions of law in criminal cases. In appeals arising under the latter statute, a denial of permission to the state to appeal, if that denial is not an abuse of discretion, deprives the appellate tribunal of subject matter jurisdiction. *State* v. *Bergin,* supra, 214 Conn.

660–63; *State* v. *S & R Sanitation Services, Inc.,* supra, 202 Conn. 313; *State* v. *Audet,* 170 Conn. 337, 340, 365 A.2d 1082 (1976). Under § 54-96, we have held permission to appeal to be jurisdictional because, at common law, the state had no right to appeal in criminal cases. *State* v. *Falzone,* 171 Conn. 417, 417–18, 370 A.2d 988 (1976); *State* v. *Audet,* supra, 340–42; *State* v. *Brown,* 16 Conn. 54, 58–59 (1843).

It is plausible to draw an analogy from § 54-96 to § 52-470 (b) because, as we explained in *Carpenter* v. *Meachum,* 229 Conn. 193, 200, 640 A.2d 591 (1994), at common law, a petitioner had no right to appeal the denial of a writ of habeas corpus. Our decision in *Carpenter* would presumably permit the legislature to impose conditions on appellate review that, if not met, would deprive an appellate tribunal of jurisdiction.

On further reflection, however, we are persuaded that the question before us is not one of legislative power but of legislative intent. See *Ambroise* v. *William Raveis Real Estate, Inc.,* 226 Conn. 757, 764, 628 A.2d 1303 (1993). When the legislature enacted § 54-96, it coupled the grant of authority for the state to appeal with the necessity for the state to obtain permission to appeal. By contrast, when the legislature enacted § 52-470 (b), it limited a statutory right to appeal that had existed, unconditionally, since 1882. *Carpenter* v. *Meachum,* supra, 229 Conn. 202; *Iovieno* v. *Commissioner of Correction,* 222 Conn. 254, 259–60, 608 A.2d 1174 (1992). The issue in this case, therefore, is whether the legislature, in amending § 52-470, intended to impose a jurisdictional limitation on appellate jurisdiction or intended merely to limit the scope of appellate review. In light of the significant role of the writ of habeas corpus in our jurisprudence; *Gaines* v. *Manson,* 194 Conn. 510, 516, 481 A.2d 1084 (1984); and the strong presumption in favor of appellate jurisdiction; *Glastonbury Volunteer Ambulance Assn., Inc.*

v. *Freedom of Information Commission,* 227 Conn. 848, 854, 633 A.2d 305 (1993); *Ambroise* v. *William Raveis Real Estate, Inc.,* supra, 765; we conclude that the legislature intended the certification requirement only to define the scope of our review and not to limit the jurisdiction of the appellate tribunal.[3]

B

In *Simms I,* we proposed that, as a prerequisite to plenary appellate review of the merits of the dismissal of a habeas corpus petition, a petitioner who is denied a timely request for certification to appeal must demonstrate that the denial of certification was an abuse of discretion. Adhering to that construction of the substantive import of § 52-470 (b), we now consider the standards by which such a possible abuse of discretion should be measured.

In cases arising under § 54-96, we have inquired, on appeal, whether the record demonstrates that the denial of permission to the state to appeal constituted a clear and extreme abuse of discretion or resulted in an apparent injustice. *State* v. *Bergin,* supra, 214 Conn. 660–61; *State* v. *S & R Sanitation Services, Inc.,* supra, 202 Conn. 311; *State* v. *Avcollie,* supra, 174 Conn. 110–11. That standard is correct but requires amplification in the context of habeas corpus appeals.

We may usefully incorporate, by analogy, the criteria adopted by the United States Supreme Court in *Lozada* v. *Deeds,* 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), in its analysis of the certificate of probable cause to appeal that is part of the federal statute governing habeas corpus. See 28 U.S.C. § 2253; see

---

[3] The United States Supreme Court has similarly concluded that the certification requirement contained in 28 U.S.C. § 2253 is not jurisdictional. *Davis* v. *Jacobs,* 454 U.S. 911, 915, 102 S. Ct. 417, 70 L. Ed. 2d 226 (1981); I. Robbins, "The Habeas Corpus Certificate of Probable Cause," 44 Ohio St. L.J. 307 (1983).

generally 2 J. Liebman, Federal Habeas Corpus Practice and Procedure (1989) § 30.4; L. Yackle, Postconviction Remedies (1981) § 160. The court held in *Lozada* that, in order to obtain a certificate of probable cause to appeal, a habeas petitioner must make a substantial showing that he has been denied a federal constitutional right. *Lozada* v. *Deeds, supra,* 431. A petitioner satisfies that burden by demonstrating: "that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Emphasis in original; internal quotation marks omitted.) Id., 432; *Barefoot* v. *Estelle,* 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).

Accordingly, we hold that, in an appeal under § 52-470 (b), a petitioner will establish a clear abuse of discretion in the denial of a timely request for certification to appeal if he can demonstrate the existence of one of the *Lozada* criteria described above. In enacting § 52-470 (b), the legislature intended to discourage frivolous habeas appeals. *Iovieno* v. *Commissioner of Correction, supra,* 222 Conn. 259–61. A habeas appeal that satisfies one of the *Lozada* criteria is not frivolous.

## II

We turn now to decide whether the petitioner has established a clear abuse of discretion in the habeas court's denial of his request for certification. We must determine whether a certifiable issue exists, by *Lozada* criteria, either with respect to the habeas court's dismissal of the third count of the habeas petition or with respect to the habeas court's denial of the relief requested in the first and second counts of the petition. We conclude that the habeas court's denial of certification was not an abuse of its discretion.

No further appellate review was warranted with respect to the habeas court's dismissal of the petitioner's claim, in the third count of his petition, that the trial judge's failure to recuse himself because of his prior judicial contacts with the petitioner violated the petitioner's right to due process. Under well established case law, reasonable jurists could not differ that such a claim can be raised by habeas corpus only by alleging some excuse for the failure to have pursued it on direct appeal. *Jackson* v. *Commissioner of Correction,* 227 Conn. 124, 129–32, 629 A.2d 413 (1993); *Morin* v. *Manson,* 192 Conn. 576, 580, 472 A.2d 1278 (1984); *Cajigas* v. *Warden,* 179 Conn. 78, 81, 425 A.2d 571 (1979). The petition contains no such allegation. The petitioner's testimony that he asked his counsel to pursue the issue may be relevant to his claim of ineffective assistance of counsel, but it does not address the issue of deliberate bypass of the process of direct appeal or of cause and prejudice for failure to present such an issue in the direct appeal. "[A]ttorney error short of ineffective assistance of counsel does not adequately excuse compliance with our rules of appellate procedure." *Jackson* v. *Commissioner of Correction,* supra, 135–36.

The habeas court likewise did not abuse its discretion in denying certification to appeal its decision that the petitioner had failed to prove ineffective assistance of trial or appellate counsel. The crux of the petitioner's claim related to his counsels' failure to pursue the petitioner's interest in the disqualification of the trial judge, either for actual bias or for having created an appearance of bias, because the trial judge had presided over another criminal trial involving the petitioner and had commented critically while sentencing him in those proceedings. Considering the record before the habeas court and the applicable legal principles; see, e.g., *Liteky* v. *United States,*     U.S.    , 114 S. Ct. 1147,

1155, 127 L. Ed. 2d 474 (1994); *Safford* v. *Warden,* 223 Conn. 180, 190–91, 612 A.2d 1161 (1992); we are not persuaded that the issues, as presented by the petitioner, were debatable among jurists of reason, that they could reasonably have been resolved differently, or that they raised questions deserving further appellate scrutiny.

The judgment is affirmed.

In this opinion BORDEN and LAVERY, Js., concurred.

CALLAHAN, J., concurring. In light of the precedent established by *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994) (*Simms I*), I concur in the result.

Because I was not a member of the panel that decided *Simms I,* however, I feel obligated to express my opinion that part III of that opinion wherein this court afforded a habeas petitioner a right of appeal from the trial court's denial of certification, was incorrectly decided. I believe that the plain language and the legislative history of General Statutes § 52-470 (b) both clearly indicate that the legislature intended prohibition of any appeal of a judgment rendered in a habeas corpus proceeding after a denial of certification by the habeas court. See 7 S. Proc., Pt. 5, 1957 Sess., pp. 2936, 2939–40; 7 H.R. Proc., Pt. 5, 1957 Sess., pp. 2881–83. If an appeal from a denial of certification was to be permitted, it should have been accomplished by the amendment of the statute by the legislature and not by this court. See *Starr* v. *Commissioner of Environmental Protection,* 226 Conn. 358, 395, 627 A.2d 1296 (1993); see generally *Simms I,* supra, 229 Conn. 189 (*Borden, J.,* concurring).

BERDON, J., dissenting. The last time the petitioner was before us, the majority held that this court lacks jurisdiction to consider a writ of error brought by an

unsuccessful habeas petitioner who has been denied certification to appeal. See *Simms* v. *Warden,* 229 Conn. 178, 640 A.2d 601 (1994) (*Simms I*). I dissented in that case; id., 192; and continue to believe that habeas petitioners who are denied relief by the habeas court should have an absolute right to appeal by bringing a writ of error. See *Carpenter* v. *Meachum,* 229 Conn. 193, 203, 640 A.2d 591 (1994) (*Berdon, J.,* dissenting). This was the established practice in our state for many years. See id., 209 (*Katz, J.,* dissenting). Furthermore, providing habeas petitioners with an absolute right to appeal was in keeping with the function of the Great Writ of liberty, which is to serve as "a bulwark against miscarriages of justice and convictions that violate fundamental fairness." Id., 203 (*Berdon, J.,* dissenting); see also *Lozada* v. *Warden,* 223 Conn. 834, 840, 613 A.2d 818 (1992).

In *Simms I,* the majority claimed that making the writ of error unavailable to disappointed habeas petitioners would not leave these petitioners "remediless to obtain review of the merits of the habeas corpus judgment"; *Simms I,* supra, 229 Conn. 186; because a petitioner may bring an appeal claiming that "the habeas court's denial of certification was an abuse of that court's discretion." Id., 187. In my dissenting opinion in the companion case of *Carpenter* v. *Meachum,* supra, 229 Conn. 204, I questioned whether such an appeal would afford meaningful review to a petitioner's claim. Today's decision demonstrates that it will not.

The first count of the petition before us claims ineffective assistance of counsel based on trial counsel's failure to make a motion to disqualify the trial judge from presiding over the eighteen year old petitioner's trial on assault and robbery charges. The same trial judge had presided over the petitioner's felony murder trial just two months before, and had called the petitioner a perjurer in open court and imposed the maximum sen-

tence of life imprisonment (sixty years).[1] The trial judge had also criticized the petitioner for his refusal to cooperate with the state in the prosecution of two other defendants involved in the felony murder at St. Joseph's Cathedral in Hartford, which was also the situs of the assault and robbery charges.

We have long held that "[p]roof of actual bias is not required for disqualification. . . . The appearance as well as the actuality of impartiality on the part of the trier is an essential ingredient of a fair trial." (Citations omitted.) *Cameron* v. *Cameron,* 187 Conn. 163, 170, 444 A.2d 915 (1982); see also *State* v. *Santangelo,* 205 Conn. 578, 602, 534 A.2d 1175 (1987). Furthermore, "[o]nce [a judge] declares that he believes a party or a witness has been deceitful . . . he cannot continue to preside in his role of impartial arbiter." *Cameron* v. *Cameron,* supra, 170.

Notwithstanding the trial judge's imposition of the maximum sentence for the felony murder conviction, the petitioner's trial counsel testified before the habeas court that he had not formally moved[2] to disqualify the trial judge because that judge had "many times expressed deep compassion toward Mr. Simms for his unfortunate upbringing."[3] The petitioner's trial counsel also testified that because he had orally requested the judge to disqualify himself[4] and the trial judge had

---

[1] General Statutes § 53a-35b provides in part that "[a] sentence of imprisonment for life shall mean a definite sentence of sixty years . . . ."

[2] Practice Book § 997 provides that "[a] motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification . . . ."

[3] Parenthetically, in addition to the life sentence of sixty years, the trial court imposed on the petitioner an effective sentence of twenty years for the assault and robbery convictions, to be served consecutively to the felony murder conviction—a total of eighty years.

[4] Without any reference to the trial judge's statement at the prior felony murder sentencing hearing that he considered the petitioner to be a per-

denied the motion, he had feared that filing a written motion would, to "the detriment of [his] client, irritate the trial judge." The first reason is wholly illogical in view of the fact that the judge had imposed the maximum sentence for the felony murder conviction. The second reason is insufficient as a matter of law.

The majority's "analysis" of this claim is contained in one sentence of its decision: "Considering the record before the habeas court and the applicable legal principles . . . we are not persuaded that the issues, as presented by the petitioner, were debatable among jurists of reason, that they could reasonably have been resolved differently, or that they raised questions deserving further appellate scrutiny." This failure to

jurer and was concerned that the petitioner had failed to cooperate with the state, trial counsel orally moved for disqualification as follows:

"Mr. Eisenman [petitioner's trial attorney]: . . . Your Honor, my client has just brought a request to me just a few minutes ago and I have to address the court. Mr. Simms has told me, we have discussed this previously and I told him that there was absolutely nothing in our law that prohibits this because of the role of the court and the role of the judge and the role of the jury as the finders of the fact, and also that body that determines guilt or innocence by jury trials. First of all, Mr. Simms stated that since it was this court that sentenced him in the previous case, that he questions as to whether or not this court should be sitting on this case. . . .

"The Court: . . . . As to the . . . motion, the court has indicated that in the presence as the judge, the presiding officer of the trial, is not as you indicated, the fact finder. *I can see that if there was some type of previous prejudice, that court might feel that it should be disqualified but I don't know of any that previously has arisen which would cause me to think of disqualifying myself.*

"Mr. Eisenman: Your Honor, I have reviewed very rapidly, volume one which is all there is available so far of the transcript on the trial, state versus Floyd Simms, consisting of five hundred four pages and I'm certainly familiar with the rest of the trial, almost verbatim and I agree completely. However, my client has asked me to raise that point and I have done so.

"The Court: All right. Mr. Simms's motion . . . must be denied without factor to indicate I don't believe he will be prejudiced by . . . the present role of the judge in the trial being prejudicial to his interests with his motion and you may have exception to the ruling of the court and it may be duly noted.

"Mr. Eisenman: Thank you, Your Honor. . . ." (Emphasis added.)

undertake any analysis of the petitioner's claim confirms my belief that the abuse of discretion standard effectively forecloses meaningful review of habeas corpus judgments.

I would reach the merits of the petitioner's claim. Accordingly, I respectfully dissent.